## MALLETT v. KELLAR.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. PARTNERSHIP—DISSOLUTION—DISTRIBUTION OF ASSETS—CAPITAL CONTRIBUTED.

A partnership was formed by one member contributing $1,000 to the firm's capital and the other $4,000. The partnership agreement provided that the firm was to pay each partner a salary of $2,500 per annum. The partner contributing the larger amount was supposed to have charge of the firm books, and there was a provision for payment of interest on his excess capital after a certain date. *Held*, that the theory of the partner contributing the lesser amount that he was the practical man in the firm, and his services were to offset the other's excess capital, was not sustained by the facts.

2. SAME—LIABILITY FOR LOSSES.

A partnership was formed by one partner contributing $1,000 to the firm capital and the other $4,000. The partnership agreement provided that after salaries of $2,500 to each member, and rent, clerk hire, etc., were paid, and losses, if any, charged up, the net profits were to be divided share and share alike. *Held*, in a suit for dissolution, that the salaries and other expenses were not to be treated as losses, and charged up to the firm before the distribution of the assets, so as to make the partner contributing the larger amount of the capital proportionately liable therefor, but that salaries were to be charged to each partner in the final distribution.

Appeal from Special Term, Kings County.

Action by Samuel S. Mallett against Stanley E. Kellar. From the judgment, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Eustace Conway (E. L. Barnard, on the brief), for appellant.
Edwin S. Merrill, for respondent.

WOODWARD, J. On the 1st day of April, 1901, the plaintiff in this action entered into a contract of copartnership with the defendant, under the terms of which, as finally modified by mutual consent, the defendant, Mr. Kellar, agreed to contribute $1,000 to the capital of the firm, and the plaintiff, Mr. Mallett, in a like manner agreed to place $4,000 in the fund; making the capital $5,000. This was done, and the partnership began business, conducting it for about five months at a loss, when this action was commenced for a dissolution of such part-

nership, resulting in the appointment of a receiver, and the final judgment which is now before us on appeal. The only question here of any importance is the distribution of the assets of the copartnership, which has been fixed by the report of a referee duly appointed in the action, which report has been duly confirmed. By the provisions of the articles of agreement under which the copartnership was performed it was provided that: "The firm is to pay said Kellar and said Mallett each a salary of $2,500.00 per annum, payable so that neither partner shall have more than six hundred and twenty-five dollars per quarter, unless by mutual consent." There is some effort on the part of the appellant to create the impression that he was the practical man in the copartnership, and that his services were to offset the capital of the plaintiff in excess of $1,000; but there is nothing in the agreement, outside of the difference in the amount of capital contributed, to support this theory. In view of the fact that they were to draw equal salaries, and that the plaintiff was supposed to have charge of the firm books, coupled with a provision for payment of interest on excess of capital after the 1st day of April, 1902, we are of opinion that the case presents no facts calculated to take it out of the ordinary rules of law in relation to copartnerships. The contract further provided that after "the salaries, rent, clerk hire, etc., are paid, and losses, if any, charged up, the net profits are to be divided, share and share alike, but no profits are to be divided until after October 1st, 1901, except by mutual consent." The theory of the learned referee, upon which the adjustment rests, was that the copartnership was an equal partnership; that each partner was liable for one-half of the debts and losses of the firm, and that the salaries of both members were a proper charge upon the resources of the partnership. The plaintiff had withdrawn his salary for the five months under the terms of the partnership agreement, and the learned referee gave the defendant credit for a like sum, with some expenses, and added this to the $1,000 of capital contributed, and in this way reached the conclusion that there was practically no part of the partnership assets in the hands of the receiver belonging to the defendant. The defendant urges that these salaries and other expenses should have been treated as losses, and charged up to the firm before the adjustment, which would have the effect of charging the plaintiff with about $4 of loss for every $1 of loss on the part of the defendant, and would thus operate to give the defendant some portion of the funds in the hands of the referee; but in this we think he is clearly mistaken. The clause of the contract which provides for charging up losses to the firm expressly declares that this shall be done only "after the salaries, rent, clerk hire, etc., are paid," and it contemplates merely the method of distributing profits upon the business, taking out the incidental losses, and not the final adjustment of the copartnership affairs, where the business has been run at a loss. The rule is well settled that, in the absence of any agreement to the contrary, the presumption will be that the loss is to be shared by the partners equally, although the contribution of capital may have been unequal (22 Am. & Eng. Ency. of Law, 87, and authorities cited in notes), and the weight of authority is in favor of the proposition that this is so even in the case of a partner who contributes no capital save that of his labor.

Woelfel v. Thompson, 173 Mass. 301, 302, 53 N. E. 819, and authority there cited. There being no special agreement in this case in reference to the impairment of capital by the losses of the firm, and the contract clearly providing for the payment of the agreed salaries out of the funds of the firm, we are of opinion that the learned referee has applied the correct principle to the distribution, and there is no suggestion that his figures are not correct. This contract, like every other valid agreement, should be construed in the light of the circumstances surrounding it, and with the purpose of arriving at the construction which the parties themselves contemplated; ' and there is certainly no reason to suppose that the plaintiff would have contributed $4,000 to the capital against $1,000 by the defendant if he had understood that, in the event of losses impairing the capital, he would be called upon to pay them at the rate of $4 to $1; that he would be compelled to pay the defendant a salary in that ratio for managing the business at a loss. While men do make foolish contracts, there is no presumption that they have done so beyond the clearly expressed language of the writing to be construed, and in the case now before us there is no justification for forcing a sacrifice beyond his legitimate losses upon the plaintiff.

The final judgment appealed from should be affirmed, with costs. All concur.